IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Innovation Industries, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 25 C 3157 |
| | ) | |
| | ) | |
| The Partnerships Identified on | ) | |
| Schedule A, | ) | |
| | ) | |
| Defendants. | ) | |

<u>Memorandum Opinion and Order</u>

Plaintiff filed this suit alleging copyright infringement against a host of defendants. I granted plaintiff's motion for a preliminary injunction, including an asset restraint. Since then, three defendants--Umagic, Sumnify, and Perbelee[1]--have appeared through counsel and answered the amended complaint. Defendants now move to vacate the preliminary injunction, arguing that plaintiff cannot demonstrate a likelihood of success on the merits or the other factors required to support a preliminary injunction. For the reasons explained below, the motion is granted in part and denied in part.

---

[1] References to "defendants" in this order refer to these three defendants alone unless otherwise indicated.

I.

Plaintiff sells a hummingbird feeder heater that prevents the "nectar" in the feeder from freezing, allowing hummingbirds to feed even in cold temperatures. The heater is listed for sale on various retail websites, accompanied by the image below, which was published online on June 12, 2019. Mariane Decl., ECF 47-1 ¶ 3.



The image, which plaintiff captured in January 2017, shows a hummingbird at a feeder, a digital weather monitor displaying a below-freezing temperature, and a snowy background. The image was registered with the United States Copyright Office on January 17, 2025 under U.S. Copyright Registration Number VA 2-428-593. *See* ECF 8-1 (registration certificate).

Plaintiff claims that defendants copied this image and used it to sell their own products. The accused image used by defendants is shown below.



II.

Courts in this district consider the same factors for dissolving a preliminary injunction as those applied when granting or denying one in the first place. *See, e.g.*, *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *1–2 (N.D. Ill. Nov. 23, 2022). Those factors require the party seeking the preliminary injunction to show that "it is likely to succeed on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm in the absence of an injunction." *DM Trans, LLC v. Scott*, 38 F.4th 608, 617 (7th Cir. 2022) (citation omitted). If it can make that showing, the court then "balances the harms to the moving party, other parties, and

the public." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381 (7th Cir. 2018) (citation omitted).

To succeed on the merits of its copyright infringement claim, plaintiff will need to prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 886 (7th Cir. 2021) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

In support of the first prong, plaintiff has produced the registration for the copyright at issue, which "constitutes *prima facie* evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) (citing 17 U.S.C. § 410(c)). Nonetheless, defendants argue plaintiff has failed to carry its burden, demanding that it produce more evidence to establish its ownership of a valid copyright. But having supplied the copyright registration for the image and in the absence of evidence casting doubt on the copyright's validity, plaintiff is under no obligation to supplement that evidence further.

Defendants also argue that the digital weather monitor appearing in the image is not protectable because that monitor was previously for sale on the Bass Pro website. But plaintiff does not claim to have a copyright of that weather display. Rather, it claims a copyright over the image as a whole, of which the weather

4

display is only a constituent part. As defendants recognize, originality, which determines copyright eligibility, "means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 519 (7th Cir. 2009) (quoting *Feist*, 499 U.S. at 345). The image at issue displays the requisite originality: it was staged and photographed by plaintiff's representative to depict a scene to show the hummingbird feeder heater working in freezing conditions. Mariane Decl. ¶ 5.

The second prong--whether plaintiff is likely to show that defendants copied elements of the image that are original--itself consists of two sub-parts. The first is "whether, as a factual matter, the defendant copied the plaintiff's protected work (as opposed to independently creating a similar work)." *Design Basics*, 994 F.3d at 887 (citation omitted). This is sometimes referred to as "copying in fact" or, as I will refer to it in this opinion, "actual copying." The second part addresses "whether the copying went so far as to constitute an improper appropriation." *Id.* (citations and internal quotation marks omitted). This is sometimes referred to as "improper appropriation," "unlawful appropriation," or, as I will call it, "wrongful copying."

Actual copying can be shown with either direct or circumstantial evidence, *id.*, and here plaintiff endeavors to use circumstantial evidence.

> A circumstantial case of actual copying requires: (1) evidence that the defendant had access to the plaintiff's copyrighted work (enough to support a reasonable inference that the defendant had an *opportunity* to copy); and (2) evidence of a substantial similarity between the plaintiff's work and the defendant's work (enough to support a reasonable inference that copying *in fact* occurred).

*Id.* (emphases in original) (citations omitted).

On the issue of access to the copyrighted work, defendants argue that plaintiff has failed to show where its copyrighted image was publicly displayed, or when it first appeared. However, plaintiff has filed an affidavit stating that the copyrighted image, photographed in January 2017, was published to its website on June 12, 2019.[2] Mariane Decl. ¶¶ 3, 5. That is sufficient to show at this stage that defendants likely had access to the copyrighted image.

The other requirement for showing actual copying by circumstantial evidence is whether there is "probative similarity"

---

[2] The webpage where it was posted still displays the image. *See* hummerhearth.com/how-to-prevent-hummingbird-feeders-from-freezing (last accessed October 22, 2025). Defendants assert that the link no longer works, but that appears to be because they omitted a hyphen between "hummingbird" and "feeders" in the URL.

between the two works.[3] Probative similarity considers all aspects of the works and "is not limited to the protected elements of the plaintiff's work." *Design Basics*, 994 F.3d at 888. There is probative similarity if "copying is a better explanation for the similarities than pure coincidence." *Id.*

Plaintiff has demonstrated a likelihood of success on showing probative similarity because copying appears to be the best explanation for how defendants created the accused image. Defendants emphasize that the backgrounds and feeders are not identical, but the two images give the same overall impression, with a hummingbird on a feeder against a wintry background, and a digital weather monitor in the foreground. Making it particularly difficult to imagine that the similarities between the two images are the result of pure coincidence is that the digital weather monitor shows the exact same information in both images. The declaration submitted by plaintiff attests that the information on the display reflects the actual conditions at the time the image

---

[3] One might notice that the term appearing in the block quote above for this part of the analysis is "substantial similarity," not "probative similarity." The Seventh Circuit has noted the confusion that sometimes arises from use of the term "substantial similarity" in both the actual copying and wrongful copying analyses, since the term means different things in those two contexts. *See Design Basics*, 994 F.3d at 888. To remedy this, the court suggested adopting the Second Circuit's use of the term "probative similarity" when discussing actual copying, and "substantial similarity" when discussing wrongful copying. *Id.* I will follow that convention.

was captured. Mariane Decl. ¶¶ 5-6. Defendants offer no evidence showing that there are stock images of this digital weather monitor showing that same information; the only images of the monitor with those numbers cited by the parties are in the copyrighted image and the accused image.[4] Accordingly, plaintiff has shown a likelihood of success on the actual copying prong.

As noted, a successful copyright infringement claim must demonstrate wrongful copying in addition to actual copying. Wrongful copying is similar to actual copying in that it depends on the similarity between the two works. But unlike the "probative similarity" inquiry undertaken for actual copying, the "substantial similarity" inquiry for wrongful copying considers only the protected elements in the plaintiff's work, comparing them to the accused work. *See Design Basics*, 994 F.3d at 888. The Seventh Circuit uses the "ordinary observer" test for wrongful copying: "'[W]hether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protect[a]ble expression by taking material of substance and

---

[4] Defendants claim to have taken the image from a public website, https://www.pexels.com, but the screenshots from that website provided by defendants do not show the digital weather monitor, nor do they provide a web address to any particular image, as opposed to the website's homepage.

value.'" *Id.* (alteration in *Design Basics*) (quoting *Wildlife Express*, 18 F.3d at 508-09).

This inquiry thus depends on which aspects of the copyrighted work are protectable, a topic discussed above in connection with the copyrighted image's originality. "Photographs may be protected under copyright law based on the expression of the artist's originality, such as his choice of composition, lighting, shading, camera angle, background, perspective, selection of film and camera, and the expression elicited from the subjects." *Bryant v. Gordon*, 483 F. Supp. 2d 605, 614-15 (N.D. Ill. 2007) (citations omitted). Often, an image's originality lies not in the subject matter itself, but "in the *rendition* of the subject matter--that is, the effect created by the combination of [the image creator's] choices of perspective, angle, lighting, shading, focus, lens, and so on." *Shrock*, 586 F.3d at 519 (emphasis in original) (citations omitted). "Most photographs contain at least some originality in their rendition, except perhaps for a very limited class of photographs" that are rote copies of another work. *Id.* (citations omitted).

Defendants argue that the differences between the two images make it unlikely that plaintiff will prevail on showing wrongful copying. But as discussed, the rendition of the hummingbird feeder and digital weather monitor against a winter backdrop satisfies the low threshold for originality required for copyright

protection. And defendants' accused image recreates that rendition to a degree that a reasonable observer would conclude it had copied the protectable aspects of the copyrighted work.

Defendants also object that the digital weather monitor is not protectable because it is in the public domain, such that it should not be considered in the infringement analysis. But as explained, the originality of plaintiff's work is found in its rendition of the subject matter--the placement of the various components relative to one another, the timing of the photograph to capture a particular set of environmental conditions, and so on--and that rendition would likely appear to an ordinary observer to have been copied in the accused work.

Plaintiff has similarly carried its burden as to irreparable harm. It has submitted evidence in the form of an affidavit that defendants' sale of their hummingbird feeder heaters--advertised using the accused image--has grossed them $637,844 in revenue. Marine Decl. ¶ 9. While plaintiff may be able to recoup some or all of that amount using traditional legal remedies, the scale of defendants' sales corresponds to significant harm to plaintiff's rights to exclusivity in its copyright. Additionally, because they both use the same image in their product listings, there is a risk of consumers associating plaintiff's and defendants' products, which might differ in material ways even if defendants' products are not decidedly inferior. *See Life Spine, Inc. v. Aegis Spine,*

10

*Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (lost customers and market share, as well as loss of goodwill, can constitute irreparable harm). Lifting the preliminary injunction would permit defendants to continue selling the products using the accused images, further compounding plaintiff's injury.

Based on the record, the balance of those harms against the harms defendants would suffer under a continued preliminary injunction weighs in plaintiff's favor, at least as to the aspects of the injunction other than the asset restraint. The evidence suggests that defendants willfully infringed plaintiff's copyright in order to advance sales of their own products. Any harm they might suffer as a result of being prevented from continuing this infringement is entitled to little weight.

That leaves the asset restraint. I am mindful that asset restraints are extraordinary measures, to be used only to preserve equitable remedies like an accounting of profits, not legal remedies. *See Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018). Indeed, "if the amount of profits is known, then the asset freeze should apply only to that specific amount, and no more." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). But it is defendants' burden to "present documentary proof that particular assets [are] not the proceeds of [infringing]

activities." *Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 c 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) (alteration in original) (citation and internal quotation marks omitted). The evidence, in this case submitted by plaintiff, shows the gross revenue defendants have received from selling products listed with the infringing image. *See* Mariane Decl. ¶ 9 (gross revenue figures for each of the three moving defendants, as provided by Amazon). As I have concluded before in a different case, in the absence of evidence sufficient to establish profits, evidence showing gross revenue can at least establish an upper limit to a potential accounting of profits remedy, since gross revenue necessarily exceeds profit. *See* Order, *Zhang v. Firegemss*, No. 24 C 4103 (N.D. Ill. Aug. 16, 2024), ECF 49 at 9–11. Accordingly, the asset restraint as to these three defendants is modified such that it applies only to the gross revenue amounts provided by plaintiff.

### III.

For the foregoing reasons, defendants' motion to vacate the preliminary injunction is granted in part and denied in part. It is granted to the extent that the asset restraint in the preliminary injunction is modified as to these defendants such that it applies only to the following amounts: $279,570 for Umagic; $11,546 for Perbelee; and $346,728 for Sumnify. The motion is otherwise denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: October 24, 2025